## SUPREME COURT.

### SLOAN agt. KANE and GRANT.

Where it appeared that the *consent* (if any was actually given) of a minor female to a marriage contract was obtained by *fraud*, through a plot of the pretended husband, in which the priest shared pretty largely—*held*, that the marriage was a *nullity*, and a *disgrace* to the men (!) concerned in it.

*New-York Special Term*, 1854.—This is an action by the mother, to procure sentence of nullity against a *fraudulent marriage* of her minor daughter.

ROOSEVELT, Justice. The alleged wife, as well as the pretended husband, is made defendant. Since the service of the summons the latter, it appears, has departed for Europe, leaving the complaint to be taken as confessed against him; and the former, on the reference, has, without objection, been examined as a witness to establish the case against both. Her statement—which is confirmed by other witnesses—shows that in November, 1852, after a few days' acquaintance, Kane, who is a widower of fifty, induced her, with another young lady, to go to the opera, and afterward, at a saloon in the neighborhood, instead of water, which she asked for, prevailed on her to take

some mixture, which so far overcame her brain that she could not recollect what occurred for some time after, till she found herself, about midnight, at the house of father ———, in Williamsburgh. There the padre, she says, gave her champagne, in the presence of Kane; and while under its influence, without her consent, after mumbling over some Latin sentences, which she did not understand, to her astonishment pronounced them man and wife. Other particulars are given by her not necessary here to repeat, except that she immediately refused, and has ever since refused, to cohabit with her pretended husband, or to acknowledge any claims on his part in that or any other character. It further appears that she was actually engaged at the time to another person of suitable age, and that the leading object of the newly pretended lover was to get possession, not of her heart, but of her inheritance; while the motive of another actor in the scene was to save her creed and secure a hundred dollars.

The whole proceeding reflects nothing but disgrace upon the full-grown men engaged in it; and to allow the plot to be successful would be a reproach to the law.

I unhesitatingly agree with the referee, judge ULSHŒFFER, that the marriage, such as it was, comes fully within the meaning of the statute, and that " the consent of one of the parties (if any was given) was obtained by force or fraud." (2 R. S. 142.)

A sentence of nullity must, therefore, be entered.