ANNA M. LECKNEY *vs.* JOHN LECKNEY.

PROVIDENCE—OCTOBER 27, 1904.

PRESENT: Tillinghast, Douglas, and Dubois, JJ.

(1)    *Divorce. Annulment of Void Marriage. Counsel Fees and Allowance.*

Under the laws of Rhode Island divorce proceedings are purely statutory.

A petition for annulment of marriage on the ground that it was originally void, brought under provisions of Gen. Laws cap 195, § 1, is by statute classed as a proceeding for divorce, and hence the incidents connected therewith, such as temporary support and counsel fees, stand upon the same footing as in other cases.

*Semble*, that such a proceeding could not be treated as one for divorce for the purpose of awarding alimony proper, or as entitling the wife to dower, as those rights depend upon the existence of a valid marriage.

PETITION FOR DIVORCE. Heard on motion for allowance, counsel fees, and expenses, on objections of respondent to jurisdiction of court.

(1) TILLINGHAST, J. This is a petition for the annulment of a marriage, entered into between the parties on the 26th day of November, 1882, on the ground that the respondent then had a former wife, who was still living, and from whom he had not been divorced.

The petitioner alleges that she was wholly ignorant of the fact that the respondent had a former wife at the time of her marriage with the respondent, and never learned of it until the time when she filed this petition.

The prayer of the petition is that a decree of this court may be made annulling said marriage between the petitioner and the respondent, on the ground that it was originally void.

The case is before us upon the motion of the petitioner for an allowance for her support during the pendency of the petition, and also for counsel fees and expenses to enable her to prosecute said petition; and the point is made by respondent's counsel that the court has no jurisdiction to grant such an allowance, on the ground that upon the petitioner's own showing she is not the lawful wife of the respondent, but that her marriage with him was absolutely void from the beginning.

Gen. Laws R. I. cap. 195, § 1, provides that: "Divorces from the bond of marriage shall be decreed in case of any marriage originally void or voidable by law, and in case either party is for crime deemed to be or treated as if civilly dead, or, from absence or other circumstances, may be presumed to be actually dead."

Section 14 of said chapter as amended by § 5 of Pub. Laws R. I. cap. 971, provides, amongst other things, that the court may, in its discretion, make such allowance to the wife, out of the estate of her husband, for the purpose of enabling her to prosecute or defend against any such petition for divorce, in case she has no property of her own available for such purpose, as it may think reasonable and proper.

Under the law of this State, and such is the law generally

in this country, divorce proceedings are purely statutory, *Sammis* v. *Medbury,* 14 R. I. 214; and hence we have simply to determine as to the proper construction of our statute of divorce as applicable to a case like the one before us.

That the parties to this suit entered into a contract of marriage, as above set out and sworn to by the petitioner, is not denied or questioned. By so doing they became husband and wife *de facto,* at least, and under the statute a decree of this court avoiding said marriage is necessary in order to protect the rights of the wife before the public; and such a decree can only be obtained by prosecuting a petition for *divorce,* which the petitioner is now proceeding to do.

The only remedy which the statute gives her is by way of a petition for divorce from the bond of marriage, and the proceeding which it prescribes is classed as a proceeding for divorce. And hence we are of opinion that the incidents connected therewith, such as temporary support of the petitioner, and counsel fees, stand upon the same footing as in other cases.

Said section 14 makes no distinction as to the grounds upon which the petition is based, but provides, generally, that the court may in its discretion make an allowance to the wife for the purpose of enabling her to prosecute or defend against any such petition for divorce; that is, as we interpret it, any petition which is based upon a statutory ground.

It is true that the term "divorce" means primarily the dissolution or partial suspension by law of the marriage relation, and presupposes the existence of a valid marriage. But it is sometimes also applied to a sentence of nullity which establishes the fact that a supposed or pretended marriage either never existed at all, or at least was voidable at the election of one or both of the parties. Cyc. Law Div. 291. And the term "divorce" is so applied to a proceeding like the one before us by our statute.

That it was competent for the General Assembly to denominate a proceeding to annul a marriage of this kind a petition for divorce, there can be no doubt. And having so denomi-

nated it, this court is authorized to treat it as such for the purposes aforesaid.

Of course it can not be treated as a divorce for the purpose of awarding alimony proper, or as entitling the wife to dower, as those rights depend upon the existence of a valid marriage. But for the purpose of obtaining a decree declaring such a marriage void under said section 1, the proceeding is one for divorce.

Owing to the difference between the language of our statute and that of other States relating.to the subject of divorce, but little aid can be obtained from the decisions of the courts of those States in regard to the proper construction of the statute before us.

While, therefore, not questioning the correctness of the decisions relied on by counsel for respondent which hold that under the statutes upon which they are based no allowance *pendente lite* can be made in a case where it appears that the marriage was void *ab initio*, yet, for the reasons above given, we are of opinion that our statute authorizes the making of such an allowance.

We also find good authority for the position which we have taken. Thus in *Frith* v. *Frith*, 18 Ga. 273, Benning, J., in delivering the opinion of the court, adopted the rule laid down by Shelford on Marriage and Divorce, that: "After proof of a marriage in fact, alimony, pending the suit, will be allotted, whether it be commenced *by* or *against* the husband, not only in cases of impotency, but in all cases of nullity of marriage."

The case of *Lea* v. *Lea*, 104 N. C. 603, decided in 1889, is so strongly in point, and the reasoning of the court is so cogent and satisfactory, that we will quote from it somewhat at length.

That was an action to have a marriage declared void because of the fact that the defendant at the time of the marriage had a former wife still living, and it was before the court on a motion for alimony *pendente lite*, as is the case at bar. Shepard, J., in delivering the opinion of the court, said: "The defendant denies his liability for alimony *pendente lite*, for the reason that this is not, technically, an action for divorce from the bonds of

matrimony, but an action to declare a marriage void because of a prior existing marriage on the part of the defendant.

" At common law, suits for nullity were freely entertained in the ecclesiastical courts, and, while they were unnecessary in cases like the present, so far as they affected the actual legal relations of the parties, it was deemed 'expedient to procure a sentence to prevent the consequences which might, in future, take place from the death of witnesses, or other occurrences rendering proof of the invalidity of the marriage difficult or impossible. . . . It is a matter of duty which the courts owe to the public to declare the situation of the parties. . . . It may be necessary, for the convenience and happiness of families, and of the public, likewise, that the real character of these domestic connections should be ascertained and made known.' Shelford on Marriage and Divorce, 332. Appreciating these reasons, our legislature has provided (The Code, § 1283) 'that the Superior Court, in term-time, on application made as by law provided by either party to a marriage contracted contrary to the prohibition contained in chapter 42 (The Code), or declared void by said chapter, may declare such marriage void from the beginning.'

" Chapter 42, § 1810 of The Code, provides that all marriages 'between persons, either of whom has a husband or wife living at the time of such marriage . . . shall be void.' "

It appears that The Code, § 1291, *et seq.* of said State provides that such alimony may be given where any married woman shall apply for a divorce from "the bonds of matrimony or from bed and board." In view of that provision, the court said:

"It is insisted by the defendant that, as the marriage was void, there were no 'bonds of matrimony' to dissolve, and, therefore, the plaintiff's case is not within the statute. We can not accept this restricted interpretation. The words, from the bonds of matrimony' *a vinculo matrimonii*, have a well-known significance at common law, and it must be presumed that it was in this sense that they were used by the legislature.

"At common law, no divorce *a vinculo* could be granted, except for causes existing previous to the marriage, and which

'rendered the marriage unlawful· *ab initio.*' 'In such cases,' says Blackstone, vol. 2, 94, 'the law looks upon the marriage to have been· *always null and void,*' . . . and decrees not only· a separation from bed and board, but *a vinculo matrimonii* itself.' In view of this high authority the argument of the defendant, founded upon the strict and literal meaning of the words of the statute, must fall to the ground. Pre-contract of marriage is, in common legal parlance, considered as a cause for divorce. For example, we have the able and discriminating Mr. Irving Browne, in his work on 'Domestic Relations,' 61, using the following language: 'The law recognizes three kinds of divorces—first, divorces on the ground of the nullity of the marriage contract . . . For this divorce there are, generally, five causes—lack of legal aid, *former marriage,*' &c."

The learned judge, in speaking of the meaning of the word "divorce," then quotes from Ruffin, C. J., who, in interpreting the same statute, said: "It is plain, therefore, that the act covers the case in which the parties contracted by show of marriage, but were never in law and truth married, for want of capacity, for which reason the sentence pronounces the marriage *null and void,* but *because* there is a marriage *de facto* the sentence proceeds to dissolve *that.* . .

"The defendant further contends that, inasmuch as the plaintiff *alleges* that the marriage is void, she is estopped. This is but another form of the foregoing objection, and is, therefore, untenable. If, as we have seen, her case is within the statute allowing alimony, it would be strange indeed if she is to be deprived of it by alleging the very fact upon which her cause of action depends. All that the law requires is the proof or admission of a *de facto* marriage. This suggestion of estoppel comes with little grace from one who has beguiled the plaintiff into a false marriage, and who, when she is compelled to leave him, by reason of his cruel 'treatment, as well as the discovery of her forlorn legal *status,* detains from her what little property she owns."

Mr. Bishop, in his work on Marriage, Divorce, and Separation, vol. 2, § 925, says, that "the courts have generally held

the mere *de facto* marriage to be adequate for temporary alimony and suit-money in the nullity suit, whether on the allegation that the marriage was void or that it was voidable." See also Amer. & Eng. Ency. L. vol. 2, 2nd ed. p. 104, and cases cited in note 3.

In *North* v. *North*, 1 Barber's Chancery Reports, 241, Chancellor Walworth, in speaking of allowance for the expenses of defending a suit for divorce, uses the following language: "Ayliffe says, a husband, regularly speaking, is bound to allow his wife alimony pending the suit, whatever the cause may be. Poynter also lays down the rule, generally, that in all suits of divorce, or suits for the restitution of conjugal rights, or in suits of nullity, if the nullity be promoted by the husband, as soon as the court is judicially informed that a fact of marriage has taken place, it is competent for the wife to apply for alimony pending the suit."

It is true the decision last referred to was rendered by a court of chancery, and was not based upon a statute. But it certainly takes a most just and equitable view of a case of this sort, and shows that courts will go as far as they reasonably can in granting relief to the innocent party.

Here the petition shows that the respondent, by the commission of a heinous crime, has placed the petitioner in her present unfortunate position, and the statute in question, being in the nature of a remedial one, should be so construed as to relieve her as far as may be from the consequence of such a wrong.

The motion will be set down for hearing upon the question as to the amount of the allowance to be granted, on Saturday, October 29, 1904, before the court in chambers.

*James A. Williams*, for plaintiff.
*James A. Shields*, for respondent.