REID v. REID.

(Supreme Court, Special Term, Queens County.  April 15, 1911.)

1. MARRIAGE (§ 3*)—LAW GOVERNING.

A marriage between a female resident of New York and a resident of Maryland, celebrated in the District of Columbia, is not governed by the New York law.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 3, 23; Dec. Dig. § 3.*]

2. APPEARANCE (§ 18*)—EFFECT—JURISDICTION.

A husband sued for annulment of marriage can deny the court's jurisdiction of the res, though he has appeared generally and answered.

[Ed. Note.—For other cases, see Appearance, Cent. Dig. §§ 76–78; Dec. Dig. § 18.*]

Action by Marian Lindsay Reid against Archibald Graham Reid. On demurrer to defenses. Judgment for defendant.

Kindleberger & Robinson (E. Crosby Kindleberger, of counsel), for plaintiff.

Harrison, Elliott & Byrd (Wm. Byrd, of counsel), for defendant.

GARRETSON, J. This is an action to annul a marriage on the ground that at the time it was entered into by the parties the plaintiff was under 18 years of age, to wit, of the age of 17 years and 5 months. The complaint alleges that the marriage was contracted in Washington, in the District of Columbia, on January 17, 1910; that at that time the plaintiff was and is now a resident of this state. The answer denies the allegations of the residence of the plaintiff, and for a first defense alleges that prior to the marriage the plaintiff was domiciled in the state of New York and the defendant in the state of Maryland, he being a resident of the city of Baltimore; that plaintiff left her place of residence and domicile with the intention of marrying the defendant in Washington and of thereafter living with him as his wife in Baltimore; that defendant was then upwards of 21 years of age, and he further pleads that by the statute of the District, enacted by the Congress of the United States, in force at the time of the marriage, the age of consent was declared to be 16 years for males and 14 years for females; and, for a second defense, that, after the marriage was consummated, the parties went to Baltimore and resided there as husband and wife for about six months; that in Maryland at the time of the marriage, and since, the common-law rule in respect to the age of consent of parties to a marriage was and remained in force, except so far as it had been modified by a statute to the extent that no marriage license might issue unless the male should be above 21 years of age and the female above the age of 16 years; that on or about July 12, 1910, plaintiff left defendant and went to her mother's home in this state, and has since resided there; that he has requested the plaintiff to return to and live with him as his wife, but she has refused so to do; that he has at all times been and now is ready and willing to support the plaintiff as his wife and live with her in the marital relation. Then follows a further plea that this court has no jurisdiction of the subject-matter of this action. Upon demurrer heretofore interposed by the defendant to the complaint, the court gave judgment in the plaintiff's favor, with leave to defendant to answer, and the case is now presented in such form that consideration is necessarily given to matters of fact and law which were not before the court at that time.

[1] The defendant claims that the law of the place of the marriage governs and determines its validity; that the statutes of this state are not applicable for the reason that they are not of extraterritorial effect.

In the leading case of Van Voorhis v. Brintnall, 86 N. Y. 18, 40 Am. Rep. 505, it was held (quoting from the syllabus):

"The validity of a marriage contract is to be determined by the law of the state where it was entered into. If valid there, it is to be recognized as such in the courts of this state, unless contrary to the prohibitions of natural law or the express prohibitions of a statute."

And further:

"While every state can regulate the status of its own citizens, in the absence of express words to that effect, a legislative intent to contravene the jus gentium under which the question of the validity of the marriage contract is referred to the lex loci contractus cannot be inferred. The intent must find clear and unmistakable expression."

The case cited and that of Thorp v. Thorp, 90 N. Y. 602, 43 Am. Rep. 189, hold that the foregoing rule is not less operative because the party went into another state to avoid the effect of the laws of this state. It is confidently assumed that it will not be seriously contended, if at all, that the marriage of the parties was "contrary to the prohibitions of natural law," or violative of the fundamental principles upon which the social fabric of civilized countries is commonly founded.

In the cases cited the statutes of this state prohibiting the marriage of a guilty divorced person during the lifetime of the former spouse, and the like provisions of the judgment founded thereon, were held not to invalidate a marriage entered into in another state by such person in violation thereof. And, while the statutes and the provisions of the judgment were said to be penal in their nature, that they were of no extraterritorial force was expressly decided. These statutes are not so framed as to be applicable to citizens of the state who go to another state for the purpose of evading its provisions and lack in apt words a "clear and unmistakable expression" of an intent to be so applicable. 2 R. S. (9th Ed.) pt. 2, c. 8, art. 1, tit. 1, § 49; now Domestic Relations Law (Consol. Laws 1909, c. 14) § 8. The same absence of expression of intent to relate to extraterritorial evasions by its citizens appears from the wording of the statutes fixing the age of legal consent, and it seems logical that the same rule should apply. While in the former case the marriage is declared to be void, in the latter it is held to be voidable only upon declaration of a court of competent jurisdiction, should either or both of the parties thereto be under 18 years of age.

Dr. Bishop in his work entitled "Marriage, Divorce, and Separation" (1891) at chapter 29, exhaustively reviews the subject, and at section 843 states the general doctrine to be as follows:

"By the international law of marriage which ought to govern the courts in the absence of any statutes of their own forbidding, a marriage valid by the law of the country in which it is celebrated, though the parties are but transient persons, though it would be invalid entered into under the same formalities in the place of their domicile, and even though contracted in express evasion of their own law, is good everywhere. And this doctrine is specifically established in the tribunals of the common-law countries."

Without enlarging upon the subject, I am of the opinon that, upon the admitted facts in the case at bar, the marriage in question being valid at the place of celebration must be held to be valid in this state.

I am aware that the case of Mitchell v. Mitchell, 63 Misc. Rep. 580, 117 N. Y. Supp. 671, holds to the contrary, but it is in some respects distinguishable, in that in this case it in no wise appears, as was there found, that the relation established by the foreign marriage was intended by the parties to be sustained and carried out in this state. On the contrary, it was intended to be sustained and carried out in Maryland,

the domicile of the defendant, and the matrimonial domicile of the parties was actually established there.

Aside from the special circumstances of the Mitchell Case, and of each of the following cases, I am disposed to regard Donohue v. Donohue, 63 Misc. Rep. 111, 116 N. Y. Supp. 241, and Cunningham v. Cunningham, 70 Misc. Rep. 129, 128 N. Y. Supp. 104, as more consistent with authority and principle upon the rule of lex loci contractus, and upon the grounds of private international law and general public policy.

The question raised by the second separate defense that the marriage was valid by the law of Maryland, the matrimonial domicile of the parties, which domicile remains unaffected, and hence that the marriage is not voidable in this state at the suit of the plaintiff, while strongly sought to be affirmatively maintained by defendant's counsel ·upon principle and by authority, is not passed upon otherwise than as may be inferred from what is above written.

[2] That the defendant may deny the power and jurisdiction of the court to annul the marriage, even though he has appeared generally and answered, cannot be seriously questioned, for the reason that the appearance gives jurisdiction of the person only, and not of the res, which is the marriage itself, and jurisdiction in respect thereto is expressly challenged by the defendant.

It is deemed not essential to the disposition of this demurrer to refer to the other cases cited by the counsel in their elaborate and instructive briefs, but rather to be desirable that the principal question considered, and upon which the courts, of first instance are seemingly in' conflict, should be directly presented, and thus invite an authoritative determination by the appellate courts.

There should be judgment for the defendant upon the. demurrer, with costs.